

**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT MURFREESBORO**

| | | |
|---|---|---|
| **DONN PENDERGRASS,** Employee, | ) ) | **Docket No.: 2019-05-1160** |
| v. | ) ) ) | |
| **RICH TRANSPORT, LLC,** Employer, And | ) ) ) ) | **State File No.: 9424-2019** |
| **MIDWEST EMPLOYERS CAS. CO.,** Insurer. | ) ) ) | **Judge Robert Durham** |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

The Court conducted an expedited hearing on January 22, 2020, to determine whether Mr. Pendergrass is likely to prove entitlement to treatment recommended by his authorized physicians. Rich Transport denied that treatment based on utilization reviews.[1] The Court holds he is likely to do so and orders the requested medical treatment.

### History of Claim

Mr. Pendergrass worked as a tractor-trailer driver for Rich Transport. On January 25, 2019, a van rear-ended Mr. Pendergrass's truck. The collision smashed the trailer into the cab, causing Mr. Pendergrass's knees to collide with the dashboard.

After the accident, Mr. Pendergrass drove his truck home and received emergent treatment for pain in his low back and knees. The provider discharged him after diagnosing a lumbar ligament strain. The next day, Rich directed Mr. Pendergrass to Dr. Frank Thomas, who prescribed physical therapy for his low back. Mr. Pendergrass declined therapy because he thought he could not do it and it might further injure his back

---

[1] The parties stipulated for the purpose of the hearing that Mr. Pendergrass sustained compensable injuries to his left knee and low back.

1

and left knee. Dr. Thomas then ordered lumbar and left-knee MRIs.

Addressing the knee injury first, the MRI revealed a medial meniscal tear and mild tricompartmental arthritis. Rich provided a panel, and Mr. Pendergrass chose orthopedist Michal Jordan as his authorized physician. Dr. Jordan noted the MRI showed a "small" meniscus tear and "very mild" arthritis. He concluded arthroscopic treatment was reasonable since Mr. Pendergrass's condition had not improved after six weeks with some physical therapy. He stated that since there was "no significant arthritis," Mr. Pendergrass was "very likely" to have a good result.

Rich sent the surgery recommendation through utilization review (UR). Glenn Smith, D.O. declined to certify surgery on the grounds that Dr. Jordan did not document at least two "subjective mechanical complaints," such as joint pain, swelling, a feeling of giving way, or locking, clicking or popping. Dr. Jordan appealed the decision to the Bureau's Medical Director, Dr. Robert Snyder. The Assistant Medical Director, Dr. James Talmage, affirmed the UR decision, stating that the "medical information in the file did not justify an exception to ODG Guidelines." Dr. Snyder also signed off on the affirmation.

In response, Dr. Jordan provided a note stating that Mr. Pendergrass updated his status by phone, and he clearly had "joint pain, tenderness to palpation, swelling, feeling of weakness and giving way as part of his subjective symptoms." He felt that this satisfied the criteria for surgery under the ODG Guidelines. He continued to treat Mr. Pendergrass with cortisone injections and physical therapy without significant benefit.

In June, Dr. Jordan resubmitted his surgery request, and Rich sent it through UR, this time with Benjamin Broukhim, M.D. Dr. Broukhim denied the request on the grounds that Mr. Pendergrass had "significant arthritis" without specific mechanical symptoms, which did not indicate an arthroscopy and meniscectomy were necessary. Dr. Snyder affirmed the denial, stating that the "medical records, mechanism of injury, guidelines and appropriate use criteria do not support the request."

Since he could not perform surgery, Dr. Jordan found Mr. Pendergrass to be at maximum medical improvement (MMI) for his left knee. However, he imposed significant physical restrictions that prevented Mr. Pendergrass from returning to work as a truck driver.

As for Mr. Pendergrass's low back, the February 2019 MRI revealed degenerative and post-surgical changes at L4-5 and L5-S1 with foraminal narrowing at L4-5 deforming the L4 root sleeves as well as a broad-based disc bulge at L5-S1 that suggested an annular tear (disc herniation). Rich provided a panel, and Mr. Pendergrass chose neurosurgeon Oran Aaronson as his authorized physician.

2

Dr. Aaronson evaluated Mr. Pendergrass in March, observing that he complained of low-back pain and bilateral low-extremity pain with numbness radiating to his feet. Before seeing Dr. Aaronson, Mr. Pendergrass underwent two injections in his low back along with a course of physical therapy, but they had not improved his symptoms. Dr. Aaronson noted that Mr. Pendergrass underwent laminectomies at L4-5 and L5-S1 in 2017, but he had been doing "exceptionally well" before his accident. He thought the disc herniation at L5-S1 was the "most significant culprit" for Mr. Pendergrass's symptoms.

Dr. Aaronson recommended a course of epidural injections, but Rich denied it. He then declined to provide further treatment, so Rich authorized neurosurgeon Patrick Schwartz to see Mr. Pendergrass in August. Mr. Pendergrass complained of recurring pain and numbness from his left buttock to his foot that worsened with walking or prolonged sitting or standing. Dr. Schwartz recommended physical therapy as well as a referral to pain management for "evaluation and treatment of low back pain."

Rich authorized physical therapy, but sent the pain-management recommendation through UR. Physiatrist Siva Ayyar denied the referral on the grounds that it sought epidural injections as treatment for spinal stenosis, which was not indicated under ODG Guidelines. Mr. Pendergrass appealed the decision, and Dr. Snyder affirmed it because "alternative treatment and conclusion of all medical treatment has not occurred."

Mr. Pendergrass then returned to Dr. Schwartz after attempting physical therapy, which he stated he could not complete due to pain. He told Dr. Schwartz that he would like to continue therapy if he could take medication before sessions to ease the pain. Dr. Schwartz believed this was reasonable. He stated that until Mr. Pendergrass underwent a pain-management evaluation and finished physical therapy, the situation was in a "holding pattern." Despite this statement, he eventually found Mr. Pendergrass to be at MMI on November 7 because Rich denied his recommended treatment and advised that "none of his treatment will be approved."

Mr. Pendergrass testified that he has not worked since his accident. He continues to suffer from pain, swelling and weakness in his left knee as well as pain and numbness in his back that radiates down his left leg.

**Findings of Fact and Conclusions of Law**

Mr. Pendergrass must present sufficient evidence establishing that he is likely to prove at trial that he is entitled to workers' compensation benefits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019). Here, the only issue is whether Mr. Pendergrass is entitled to the treatment recommended by his authorized physicians, despite the UR denials.

To decide this issue, the Court must first look to the presumptions afforded an

3

authorized physician's treatment recommendations. Tennessee Code Annotated § 50-6-204(a)(3)(H) states that these recommendations "shall be presumed to be medically necessary." Subsection (I) goes further, providing that with the adoption of the ODG Guidelines, the authorized doctor's recommendation can only be rebutted by clear and convincing evidence that it "substantially deviates from, or presents an unreasonable interpretation of the treatment guidelines." This presumption is expanded upon in Tennessee Code Annotated § 50-6-124(h), which states that if the treatment "explicitly follows" or is "reasonably derived" from the ODG, then the presumption of necessity can only be overcome by clear and convincing evidence that the proposed treatment "erroneously applied" the guidelines or creates an "unwarranted risk."

The Appeals Board considered the interplay between these two presumptions in *Morgan v. Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at \*17-18 (Aug. 31, 2016). The Board held that before the presumption in 50-6-124(h) and 50-6-204(a)(3)(I) can be applied, the employee must first prove by expert opinion that the recommendation "explicitly follows" the ODG Guidelines. In this case, Mr. Pendergrass did not provide this evidence. Thus, the Court holds the "clear and convincing" presumption does not apply. *Id.*

However, as in *Morgan*, the Court must now consider whether the recommendations of Dr. Jordan and Dr. Schwartz are entitled to a presumption of medical necessity under section 50-6-204(A)(3)(H). Given that both doctors are authorized physicians, the presumptions clearly apply, but they can be rebutted by a preponderance of the evidence. *Id.* at \*17.

When presented with conflicting medical opinions, the Court has the discretion to determine which opinion to accept. *Bass v. The Home Depot*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at \*9 (May 26, 2017). The Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Id.*

In regard to the knee, Rich did not produce any evidence disputing the fact that Mr. Pendergrass suffered a meniscus tear or that it contributed to his symptoms. The Court finds that in his addendum, Dr. Jordan adequately responded to concerns in the first denial that he insufficiently documented subjective mechanical complaints. As for the second denial due to "significant arthritis," Dr. Jordan explicitly stated in his initial evaluation that the MRI only showed very mild arthritis, which was what justified his opinion that Mr. Pendergrass would have a good result from surgery. Finally, he examined Mr. Pendergrass several times and had ample opportunity to judge the credibility of his complaints. Under the circumstances, the Court gives more weight to Dr. Jordan's opinion and holds that Rich did not rebut the presumption afforded his recommendation for arthroscopic surgery.

4

As for the low back, the MRI showed stenosis but also revealed nerve root impingement due to a disc herniation, which Dr. Aaronson, the authorized physician at the time, felt was the most significant source of Mr. Pendergrass's symptoms. Rich produced no evidence to dispute this contention. Despite the herniation, Dr. Schwartz recommended conservative care through physical therapy in conjunction with an evaluation by a pain-management physician. The UR doctor denied the referral because epidural steroid injections were not indicated under the ODG to treat spinal stenosis. Dr. Snyder affirmed the decision because other treatment methods had not been exhausted.

However, Dr. Schwartz never mentioned epidural steroid injections in either his notes or his referral. Further, he clearly intended to continue treating Mr. Pendergrass's condition, but with the assistance of pain management. It appears that the UR doctor and Dr. Snyder misconstrued Dr. Schwartz's intent in making the referral. As with the knee, Dr. Schwartz personally examined Mr. Pendergrass and was in a better position to judge the legitimacy of his complaints. Given the evidence, the Court gives more credence to Dr. Schwartz's opinion and holds that Rich did not rebut the presumption given to his recommendation for therapy in conjunction with a pain-management referral.[2]

IT IS, THEREFORE, ORDERED that:

1. Rich Transport shall authorize the arthroscopic surgery recommended by Dr. Jordan as well as the physical therapy and pain-management referral recommended by Dr. Schwartz.

2. This case is set for a Scheduling Hearing on **March 23, 2020**, at **10:00 a.m. Central Time**. The parties must call 615-253-0010 or toll-free at 855-689-9049 to participate. Failure to call might result in a determination of the issues without your participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

---

[2] The Court recognizes that Dr. Jordan and Dr. Schwartz found Mr. Pendergrass to be at MMI for his knee and low back; however, these findings are irrelevant to the obligation to continue providing medical treatment under Tennessee Code Annotated § 50-6-204(a)(1)(A).

**ENTERED January 30, 2020.**

Robert V. Durham, Judge
Court of Workers' Compensation Claims

**APPENDIX**

Exhibits:
1.   Indexed Medical Records
2.   TOA Medical Records
3.   Mr. Pendergrass's Table of Contents for Expedited Hearing
4.   Causation Letter from Dr. Jordan
5.   Wage Statement
6.   Mr. Pendergrass's affidavit

Technical Record:
1.   Petition for Benefit Determination
2.   Dispute Certification Notice
3.   Mr. Pendergrass's Statement of the Case
4.   Supplement to Statement
5.   Rich's Pre-Hearing Brief

**CERTIFICATE OF SERVICE**

A copy of the Expedited Hearing Order was sent as indicated on January 30, 2020.

| Name | Certified Mail | Email | Service sent to: |
|------|----------------|-------|------------------|
| Stephan Karr | | X | steve@flexerlaw.com nancy@flexerlaw.com |
| Michael Mansfield | | X | mmansfield@raineykizer.com cjohnson@raineykizer.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____
*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the
Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-
stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____ ☐ Motion Order filed on _____

☐ Compensation Order filed on_____ ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee
Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____
*Attach an additional sheet for each additional Appellant*

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*